# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

LORENZO ANTHONY,

    Plaintiff,

v.

WEIDMAN, MEYHOFER,
JOHN DOES 1-8, HUGHES, E.R.T.,
BABCOCK, DAVIS, TIPTON, BIRKETT,
JOHN DOE, Deputy Warden, JOHN
DOE, Administrative Deputy Warden,
OWEN, HOWARD DOE, Regional Prison
Administrator, WINN, R.N.,
ALEXANDER, R.N.,

    Defendants.
_____/

CASE NO. 07-CV-10467

DISTRICT JUDGE MARIANNE O. BATTANI
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Dkt. 39)

### I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment be **GRANTED** and the case be dismissed with prejudice.

### II.   REPORT

#### A.   Introduction

On January 30, 2007, Plaintiff, a state prisoner then housed at the Standish Maximum Correctional Facility in Standish, Michigan,[1] filed *pro se* this federal rights complaint under 42 U.S.C. § 1983 alleging that, in September 2006, Defendants conspired against him, assaulted him,

---

[1] Plaintiff is currently incarcerated at the Marquette Branch Prison in Marquette, Michigan.

punished him without legitimate penal purpose, and treated him unequally in violation of his First, Eighth, and Fourteenth Amendment rights, all in response to his penchant "for masturbating in front of staff so much." (Compl., Dkt. 1 ¶ 20.) On December 14, 2007, this case was referred to the undersigned Magistrate Judge for pretrial case management. (Dkt. 42.) Defendants Tipton, Birkett, Owen, Winn, Alexander, Weidman, Smith, Hughes and Babcock filed a motion for summary judgment on November 26, 2007 (Dkt. 39), and Plaintiff responded. (Dkt. 47.) Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.    The Complaint**

Plaintiff is no stranger to the disciplinary process. By 2006, he had received 471 misconduct tickets, including assaults, sexual offenses, threats of violence and sexual assault, groping female officers, and throwing feces and urine on guards. *Anthony v. Bauman*, No. 2:05-CV-64, 2006 WL 2548617,*1 (W.D. Mich. Sept. 1, 2006).

In the instant case, Plaintiff alleges that "[o]n September 4, 2006, at or about 1 a.m. in the morning, Defendant [Corrections Officer] Weidman came to Plaintiff Anthony's cell door and stated, 'Hey Anthony, get ready I got something for you tonight. We'll all see if you're as hard as that dick you like to play with a--hole.'" (Dkt. 1 ¶ 19.) Defendant Weidman then allegedly told Plaintiff he "was going to get 'his a-- kicked and placed on T.O.B. [top-of-bed restraints]' for masturbating in front of staff so much." (*Id.* ¶ 20.) Plaintiff also alleges that Defendant Birkett and Deputy Warden John Doe "authorized that Plaintiff be placed on T.O.B. status pass 2 hrs and 24 hrs [sic] for allegedly covering his cell door window and threatening staff, these Defendants authorized that Defendants John Does No. 1-8 of the E.R.T. to use force on Plaintiff, assault him, and place him on T.O.B. status." (*Id.* ¶ 49.)

Plaintiff was placed on top-of-bed restraints and he alleges that Defendant Meyhofer authorized the restraints and Defendants Birkett, Deputy Warden and Assistant Deputy Warden John Doe acted pursuant to that authorization. (Dkt. 1 ¶ 21.) Plaintiff avers that around 2:30 a.m. of that same day, Defendants John Doe 1-8 came to his cell, placed handcuffs and leg irons on him "prior to informing him force would be used if he failed to comply." (*Id.* ¶ 22.) Plaintiff alleges that he was told to lie down, and he did, but "without warning, Defendants . . . rushed into Plaintiff's cell, hitting him with a shield, as one of [them] kneed Plaintiff in the head, as another . . . grabbed Plaintiff's head and slammed it several times onto the concrete floor, busting open Plaintiff's chin, causing blood to run from it . . ." (*Id.* ¶ 23.) Plaintiff avers that the guards then "began to cruelly bend, twist Plaintiff's hands, and fingers to the point of breaking them, causing him to cry out in pain, numerous of [sic] times." (*Id.*) Plaintiff was then carried out of his cell, was "dropped" along the way, and was in pain because the cuffs were on his wrists so tightly, causing him to cry out in pain. (*Id.* ¶¶ 24-25.) Instead of sending Plaintiff to see a nurse as requested, Plaintiff states that the John Doe guards "simply placed a piece of cotton pack on it to catch the blood and told Plaintiff it was a[n] abrasion." (*Id.* ¶¶ 29-30.) Plaintiff told Defendants Weidman, Meyhofer, and John Does that he wanted the videotape of the incident saved for his civil lawsuit. (*Id.* ¶ 32.) The videotape is included as an exhibit to Defendants' motion for summary judgment. (Dkt. 39 at Ex. C.)

Plaintiff further complains that when he was placed in the top-of-bed restraints, his wrists and fingers were again bent and twisted by the John Doe officers and the restraints were so tight they "cut off his blood circulation, causing his hands to swell twice its [sic] size, and caused nerve damage." (Dkt. 1 ¶ 34.) Although Plaintiff told Defendant Winn that the restraints were too tight, he "faked like he was going to check the restraints, but did nothing to loosen them up to permit

blood circulation." (*Id.* ¶ 36.) Plaintiff further alleges that several hours later, although another inmate (Carter) was asked if he needed to use the restroom, Plaintiff was not given the same offer. (*Id.* ¶ 37.) When Plaintiff asked for a restroom break, he alleges that Defendant Hughes responded, "'You're going to learn to keep your dick in your pants or you'll end up like this more often!'" (*Id.* ¶ 39.)

Around 8 a.m. of that same day, Plaintiff contends that Defendants Babcock, Davis, and Owen "falsified log entries . . . saying Plaintiff was disruptive, to keep Plaintiff on T.O.B. status." (*Id.* ¶¶ 41, 43, 44.) Plaintiff avers that Defendant Tipton indicated that the decision to be taken off top-of-bed status was to be made by the third shift because the "problem started on 3rd shift." (*Id.* ¶ 45.) However, Plaintiff alleges that neither Defendant Meyhofer nor Hughes would take him off top-of-bed status even though he "was not disruptive or threatening." (*Id.* ¶¶ 48, 50.) Plaintiff further avers that although Plaintiff complained that the restraints were too tight, Defendant Alexander would not loosen them. (*Id.* ¶¶ 46-47.) Plaintiff "was not taken off T.O.B. status until the morning of 9/5/06 at or about 9 a.m." (*Id.* ¶ 53.)

Plaintiff contends that Defendants' actions: (1) violated the Eighth Amendment (Defendants Weidman, Meyhofer, Smith, John Does 1-8, Hughes, Babcock, Davis, Tipton, Birkett, John Doe Deputy Warden, John Does ADW, Owen, Howard, Doe Regional Prison Administrator, John Doe, R.N. Winn, Alexander); (2) violated the Fourteenth Amendment's Equal Protection and Due Process clauses (all Defendants); (3) amounted to an unlawful conspiracy under 42 U.S.C. § 1983 (all Defendants); and (4) amounted to the state law tort of assault and battery (John Does 1-8). Plaintiff seeks a declaratory judgment, preliminary and permanent injunctive relief, compensatory damages, and punitive damages.

4

### C. Motion Standards

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to

champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The elements of a claim under 42 U.S.C. § 1983 are: (1) the violation of a right secured by the federal Constitution or federal law that was (2) committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

**D.     Analysis and Conclusions**

**1.     Qualified Immunity**

Defendants contend that they are entitled to qualified immunity. (Dkt. 39 at 5-7.) The Supreme Court has explained that, pursuant to the defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the

relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

The Supreme Court has recently clarified the interplay between qualified immunity and summary judgment:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. As we have emphasized, '[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."' '[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.' When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, ___ U.S. ___, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

According to this recent Supreme Court precedent, courts must weave the summary judgment standard into each step of the qualified immunity analysis and must not proceed to step two unless a genuine issue of fact exists under step one. The Sixth Circuit has delineated the following steps to the qualified immunity analysis:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005) (quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002)). Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

### a. Constitutional Violation

#### i. Eighth Amendment

It is beyond dispute that, as a general proposition, an inmate's rights under the Eighth Amendment are violated when government entities or officials are deliberately indifferent to his medical needs or his safety. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "A prison official violates the Eighth Amendment only when . . . [f]irst, the deprivation alleged must be, objectively, 'sufficiently serious' [and] [s]econd, when the offending conduct itself is not a

criminal penalty. It is the 'unnecessary and wanton' infliction of pain that implicates the Eighth Amendment . . . [t]hus, a prison official will be liable under the Eighth Amendment for failing to protect an inmate only if the official acted with 'deliberate indifference.'" *Davis v. Brian*, No. 98-1810, 1999 WL 503522, *3 (6th Cir. July 9, 1999) (unpublished) (internal citations omitted). "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

In the context of prison discipline, Plaintiff must prove an unnecessary and wanton infliction of pain or the infliction of pain without penological justification. *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Under the objective inquiry in this context, the question is whether "contemporary standards of decency" have been violated. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* Thus, a prisoner need not prove a significant injury. *Moore v, Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993). Under the subjective component, the inquiry involves "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Toward that end, "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6.

Courts are to keep in mind that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (quoting *Whitley,* 470 U.S. at 320.) The factors to be analyzed when considering the conduct of prison officials are: 1) the need for the application of force, 2) the relationship between the need for force and the amount

used, 3) the threat reasonably perceived by the responsible officials, 4) any efforts made to temper the severity of the forceful response, and 5) the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. This analysis must be made in harmony with the Supreme Court's admonition that courts should defer to prison officials as they attempt to maintain order and discipline within dangerous institutional settings. *Whitley*, 475 U.S. at 321-22. Physical restraints are constitutionally permissible where there is a penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 677750, *1 (6th Cir. Feb. 15, 1996). In addition, it should be noted that maximum-security prisoners are "'not usually the most gentle or tractable of men and women.'" *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In the instant case, Plaintiff's complaint is two-fold: (1) that he was wrongfully placed on top-of-bed restraint status and (2) that once restrained, he was mistreated and was restrained longer than necessary.

Although Plaintiff's complaint alleges that he was "placed on T.O.B. [top-of-bed restraints] for masturbating in front of staff so much" (*id.* ¶ 20), in his response to the instant motion he amends his allegations to contend that Defendants "conspired" "by fabricating a sequence of events . . . that [he] had [his] cell window covered" and was threatening and verbally abusive to staff. (Dkt. 48 ¶¶ 7-8.) The control center log indicates that on September 4, 2006, at 1:06 a.m., Plaintiff had covered his window and was unresponsive. (Dkt. 39, Ex. A at 5; Ex. B at 5.) This condition continued until Plaintiff became loud, verbally abusive, hitting on his door, kicking and screaming at staff between 1:16 and 2:30 a.m. (Dkt. 39, Ex. A at 5-6; Ex. B at 5-6.) The "ERT Team" was sent to Plaintiff's cell at 2:56 a.m., soft restraints were placed on him at 3:03 a.m., he was carried back to his cell, and at 3:10 a.m., "TOB" restraints were placed on him. (Dkt. 39, Ex. A at 6; Ex.

B at 6.)  Although Plaintiff alleges that Defendants hit him with the shield, "grabbed" and "kneed" his head and "slammed it several times onto the concrete floor," "busting open [his] chin, causing blood to run from it[,]" "cruelly ben[t], and twist[ed] Plaintiff's hands, and fingers to the point of breaking them (Dkt. 1 ¶ 23), the videotape of the events tells a different story.  (Dkt. 39 at Ex. C.) Furthermore, there is no medical evidence of an injury beyond the abrasion to the chin.  (Pl. Resp., Dkt. 47 at Ex. C.)

Under these circumstances, I suggest that the record evidence demonstrates that Plaintiff's restraint was for a proper penological purpose and that the force used to accomplish this purpose was not unconstitutionally disproportionate.  *See Scott v. Harris,* 127 S. Ct. at 1776 (where a party's version of the events is so utterly discredited by the record that no reasonable jury could have believed him," the court should "not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape").  *See also Rhodes, supra; Kennedy v. Doyle*, 37 Fed. App'x 755 (6th Cir. 2002) (affirming summary judgment in favor of defendants because top-of-bed restraints in response to incorrigible inmate behavior did not constitute excessive force in violation of the Eighth Amendment); *Hayes, II v. Toombs,* 16 F.3d 1219, 1994 WL 28606, *2 (6th Cir. Feb. 1, 1994) (granting summary judgment for defendants relying on videotape evidence and lack of medical evidence to support complained of injuries to wrists during placement in top-of-bed restraints); *Jarrett v. Bouchard*, No. 2:05-CV-195, 2006 WL 2632460 (W.D. Mich. Sept. 13, 2006) (finding no Eighth Amendment violation where plaintiff was restrained and his jaw was injured as a result of the restraint after he attempted to spit on defendants as they were removing him from the shower stall and where officer kicked the food slot door closed on plaintiff's hand, injuring his thumb, because there was no evidence that the officer did so intentionally).

I further suggest that Plaintiff has failed to come forward with sufficient evidence of unnecessary or malicious use of force to survive summary judgment. *See Scott v. Harris, supra; Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, *2 (6th Cir. Oct. 11, 1995) (summary judgment on Eighth Amendment claim appropriate where evidence showed TOB restraints used in response to Plaintiff's barricading himself in cell, flooding cell, and refusal to obey direct orders); *Miller v. Toombs*, No. 89-2340, 1990 WL 135948, *1 (6th Cir. Sept. 19, 1990) (affirming summary judgment where plaintiff was placed in restraints for 48 hours because actions were reasonable under the circumstances and plaintiff could not produce evidence of wanton conduct); *Whorton v. Bouchard*, No. 2:07-cv-18 , 2008 WL 725029, *4 (W.D. Mich. March 17, 2008) (no Eighth Amendment violation where, despite plaintiff's claim that logbooks were fabricated, the court found the "record is clear that plaintiff was placed in restraints [for three days] due to his disruptive behavior" and where Plaintiff failed to show physical harm); *Jones v. Treadeau*, No. 2:06-cv-10, 2007 WL 2728515,*4 (W.D. Mich. Sept. 17, 2007) ("Plaintiff claims that Defendant []watched as members of the ERT kicked and beat him. However, Plaintiff has produced no evidence of injuries consistent with being beaten and kicked by members of ERT . . . . Accordingly, Plaintiff cannot show, under the facts he has alleged" that the Eighth Amendment was violated).

In this case, once Plaintiff was placed on top-of-bed restraints, the log sheets indicate that he was:

(1)   checked on every fifteen minutes (Dkt. 39, Exs. A and B);

(2)   offered bathroom breaks and water that he often refused (Dkt. 39, Ex. A at 7 (5:18 a.m.), 9 (8:03 and 9:58 a.m.), Ex. B at 10 (10:02 a.m.), Ex. A at 12 (4:17 p.m.), 13 (5:45 p.m. and 6:15 p.m.), Ex. B cont'd at 4 (6:30 p.m.), 5 (9:28 p.m.), (11:40 p.m.), on September 4, 2006);

(3)   loud, verbally abusive, argumentative, and threatening (Dkt. 39, Ex. B at 8 (4:45 a.m.), Ex. A at 7 (4:15 and 4:30), 9 (8:03 a.m.), Ex. B at 11 (11:15 a.m.), 13 (2:05,

2:32, 3:00 p.m.), Ex. A at 11 (3:00 p.m.), Ex. B cont'd at 3 (5:00 p.m., 5:45 p.m., and 6:15 p.m.), on September 4, 2006, and at 15 (1:45 a.m. and 1:59 a.m.), at 15 (1:45 a.m.), 17 (5:30 a.m., 5:45 a.m., 6:00 a.m.) on September 5, 2006);

(4) spitting and tugging on his mattress or restraints (Dkt. 39, Ex. B at 7 (3:45 a.m.), 8 (5:00 a.m.), Ex. A at 7 (5:00 a.m.), 8 (5:30 a.m.), on September 4, 2006, and Ex. A at 15 (12:16 a.m.,1:45 a.m., and 1:59 a.m.), on September 5, 2006);

(5) urinating on himself rather than utilizing the offered bathroom breaks (Dkt. 39, Ex. A at 9 (8:03 a.m.), 14 (9:28 p.m.), on September 4, 2006, at 16 (5:18 a.m.), on September 5, 2006);

(6) specifically threatening that he would "stay on TOB for the next 30 days" rather than abide by the rules (Dkt. 39, Ex. A at 10 (11:43 a.m.)) and that "everyone from the Lt. to the Warden is on his list" and that they "wouldn't be doing this if they showed up to his door." (Dkt. 39, Ex. B cont'd at 4 (8:01 p.m.) on September 4, 2006); and

(7) refusing to shower (Dkt. 39, Ex. A at 18 (8:18 a.m.) on September 5, 2006), but eventually did shower and was taken to court for his appearance there. (Dkt. 39, Ex. A at 19, Ex. B cont'd at 8 (8:46 shower).).

Because of the above-described behavior, Warden Birkett ordered that Plaintiff remain on top-of-bed restraints past the ordinary 24 hour limit. (Dkt. 39, Ex. B cont'd at 6 (1:25 a.m. on September 5, 2006)). Plaintiff was on the top-of-bed restraints from 3:10 a.m. on September 4, 2006, until 8:46 a.m. on September 5, 2006; therefore, he was restrained for 29 hours and 36 minutes.

In light of the above evidence, I suggest that Plaintiff's bare allegations that the log entries were falsified and that he "was not disruptive or threatening" (Dkt. 1 ¶¶ 48, 50) are insufficient to survive summary judgment. *See Scott v. Harris, supra; Rivers, supra,* at *2 (summary judgment on Eighth Amendment claim appropriate where "record reveals that [plaintiff] was given an opportunity to use the bathroom and allowed fresh water every two hours" and where plaintiff "continued to be abusive, disruptive, and threatening" while in top-of-bed restraints ); *Anthony v. Hill*, No. 2:06-cv-9, 2007 WL 2914253, *7 (W.D. Mich. Sept. 28, 2007) (although plaintiff

contended that logbooks had been falsified, "bare allegations of such falsification alone cannot defeat defendants' motion for summary judgment" on Eighth Amendment claim that defendant had placed plaintiff in top-of-bed restraints for three days); *Denham v. Aalto*, No. 2:06-cv-74, 2007 WL 1032374, *4 (W.D. Mich. Mar. 30, 2007) (summary judgment appropriate where "plaintiff's assertions that he was denied food, water, and bathroom breaks [while on top-of-bed restraints] were not supported in the record").

Therefore, I suggest that Defendants are entitled to summary judgment based on Plaintiff's failure to come forward with sufficient evidence to support his Eighth Amendment claim.

### ii. Fourteenth Amendment

Although Plaintiff alleges a violation of the Fourteenth Amendment, the factual basis for the claim is the same as that brought under the Eighth Amendment. Therefore, the excessive force claim is properly analyzed under the Eighth Amendment and need not be separately considered. *See Rivers, supra,* 1995 WL 603313 at *2; *Anthony, supra,* 2007 WL 2914253 at *4 (where plaintiff alleged wanton infliction of pain, his "allegations [should] be analyzed under the Eighth Amendment rather than the Fourteenth").

### b. Clearly Established Right

Even if Plaintiff could show a violation of the Eighth Amendment, I suggest that the right was not clearly established in light of the above-cited case law supporting the legality of their actions.

### c. Objectively Unreasonable

I further suggest that the above case law supports the notion that Defendants acted in an objectively reasonable manner in proportion to Plaintiff's behavior. Therefore, I suggest that even

if the Court were to find a violation of the Eighth Amendment, Defendants are entitled to qualified immunity.

### 2. State Law Torts

I also suggest that, pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), this Court should decline to exercise its discretion to entertain Plaintiff's remaining pendent state law claim of assault and battery. *Id*. at 726 (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") *See also Hankins v. The Gap, Inc*., 84 F.3d 797, 802-03 (6th Cir. 1996) (when all federal claims have been dismissed at a pretrial stage and the parties are non-diverse, the district court should decline to exercise supplemental jurisdiction over the surviving state law claims).

### 3. Conclusion

For all the reasons stated above, I recommend that Defendants' motion for summary judgment be granted and the case dismissed with prejudice.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Social Security*, 474

F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                                 s/ *Charles E Binder*
                                           CHARLES E. BINDER
Dated: April 1, 2008                  United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Julia R. Bell and Clifton B. Schneider, served on Lorenzo Anthony by first class mail, and served on District Judge Battani in the traditional manner.

Date:  April 1, 2008       By     s/Patricia T. Morris
                                           Law Clerk to Magistrate Judge Binder